IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:13mj 633 |
| ) | |
| MOHAMMAD SABIR ) | |
| ) | |

## AFFIDAVIT

I, Sarah Webb Linden, after being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed by the FBI for approximately fifteen years, during which time I have been assigned to the Counterterrorism Division, the San Francisco Field Office, and the Washington Field Office (WFO). I have been assigned to a counterterrorism squad at WFO for the past ten years. I have received instruction and training, along with investigative experience, in methods of investigation relating to identifying terrorist activity directed against the United States, as well as in identifying the support network for terrorists who seek to target the interests of the United States and its allies. In the course of conducting or participating in criminal investigations, I have been involved in interviewing and debriefing witnesses and informants; conducting physical and electronic surveillance; tracing and analyzing internet protocol addresses; analyzing telephone pen registers; collecting and analyzing evidence; and preparing and executing search warrants.

2. This affidavit is submitted in support of a criminal complaint charging MOHAMMAD SABIR with making materially false, fictitious, and fraudulent statements, in

matters within the jurisdiction of agencies of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001.

3. This affidavit is based on my personal knowledge, my review of records and other materials obtained during the course of this investigation, including intercepted telephone, audio, and in-person communications, as well as information provided to me by other government personnel with knowledge relating to this investigation, particularly including my colleagues at the Washington Field Office of the FBI. Because this affidavit is for the limited purpose of setting forth facts sufficient to establish probable cause, it does not include all of the pertinent facts that I have learned in the course of this investigation.

4. MOHAMMAD SABIR is a naturalized United States citizen who serves as one of several imams at the Makki Mosque in Brooklyn, New York. The Makki Mosque also goes by the name "the Muslim Community Center of Brooklyn."

5. At all times relevant to this affidavit, the Kashmiri American Council ("KAC") was a not-for-profit organization in Washington, D.C. On December 7, 2011, the director of the KAC, Syed Ghulam Nabi Fai ("Fai"), pled guilty to conspiring to conceal that the KAC was funded with at least $3,500,000 from the government of Pakistan, including the Inter-Services Intelligence Agency ("ISI"), Pakistan's military intelligence service. That conviction was a result of an investigation that I and my colleagues at WFO conducted with the Internal Revenue Service into the sources of the money that Fai obtained in the course of his operating the KAC.

6. In the course of that investigation, FBI agents interviewed SABIR on August 12, 2010. On that date, SABIR told the investigators that he knew Fai, but denied that either he or the Makki Mosque had ever provided donations to Fai or the KAC.

7.  Fai was arrested on the basis of my criminal complaint on July 19, 2011. That same day, FBI agents again interviewed SABIR in Brooklyn, New York. This time, SABIR said that he had collected funds on behalf of the KAC on many occasions, but explained that the funds were usually used to rent buses to transport people from New York to the KAC Conference. SABIR said he had never given anyone more than $5,000 in cash.

8.  After he pled guilty, I interviewed Fai about the sources of the money that he received in the course of his operation of the KAC. On January 27, 2012, Fai told me that he received money over the years from SABIR and the Makki Mosque. Further, Fai authenticated as genuine receipts that he had signed, reflecting that Fai had received money from SABIR and the Makki Mosque over the years. One receipt, from November 2007, read as follows:

> Received an amount of $20,000 (Twenty thousand dollars) from Muslim Community Center of Brooklyn, New York. Kashmiri American Council greatly appreciates the selfless contribution and dedication of the Members of the Board of Directors of MCC. Their endless efforts will guarantee the peace in their homeland, i.e. the state of Jammu and Kashmir. We wish them well in making the MCC an exemplary place of worship in the state of New York. [signed] Dr. Ghulam Nabi Fai, 11/20/2007

9.  Another, from October 2008, read as follows:

> Received an amount of $10,000 (Ten thousand dollar) from Muslim Community Center, Brooklyn, New Jersey on account of Kashmir Fund. [signed] Dr. Fai, October 31, 2008

10. On October 16, 2012, SABIR was again interviewed by the FBI, this time at Kennedy Airport in Queens, New York. This time, SABIR said that he had collected money to donate to the KAC, but that the donations were not large amounts of money. SABIR said the funds he collected ranged between $2,000 and $2,400 each year, although the totals may have risen as high as $3,000 in a year. When asked about receipts written by Fai acknowledging

receipt from the Makki Mosque of $18,000 in 2006, $20,000 in 2007, and $10,000 in 2008, SABIR responded that the investigators were confusing different categories of donations made by the Makki Mosque.

11. On June 4, 2013, the FBI interviewed an individual to whom I will refer as "CW-5". CW-5 served as the General Secretary at Makki Mosque from 2006 to 2009. CW-5 said that when he was the General Secretary, he kept records of cash donations collected during prayer services at the mosque. After the donations had been counted by congregation members, CW-5 filled out a receipt which itemized the currency denominations, and he and the members who assisted with the counting all signed their names to it. CW-5 then listed all disbursements of the cash, and the individuals who would receive it. CW-5 said that SABIR and the other board members of the Makki Mosque signed the receipts to approve the amounts and acknowledge the disbursements to be made.

12. CW-5 said that he remembered Fai and the KAC as receiving substantially more cash than everyone else each year. CW-5 said that SABIR knew how much was to go to Fai each year, and often delivered it to Fai himself. CW-5 also pointed out that SABIR signed the receipts each year.

13. CW-5 provided the FBI with copies of documents which itemized the charitable contributions taken in and disbursed by the Makki Mosque between 2003 and 2009. Among these were documents describing a category of donations by the mosque for the years 2003, 2004, 2006, 2007, 2008, and 2009. Each of these documents listed the total amount of money disbursed by the mosque and to whom it was distributed. Except for the 2006 document, each bears SABIR's signature. In each of these documents, the largest disbursement went to Fai. These

4

disbursements were often two to three times as much as the next largest disbursements, as seen below:

| Year | Total intake | Amount to Fai | Next largest disbursement | Average disbursement (not counting Fai) | Fai's disbursement as portion of whole |
|------|--------------|---------------|---------------------------|------------------------------------------|----------------------------------------|
| 2003 | $18,798 | $8,000 | $3,500 | $756 | 43% |
| 2004 | $18,859 | $7,000 | $2,000 | $835 | 37% |
| 2006 | $24,878 | $18,000 | Not listed | Not listed | 72% |
| 2007 | $29,902 | $20,000 | $2,800 | $1,215 | 67% |
| 2008 | $20,290 | $10,000 | $3,000 | $1,715 | 49% |
| 2009 | $19,335 | $10,000 | $2,535 | $1,255 | 52% |

14. CW-5 told me that these donations were nearly all cash. That statement is corroborated by the fact that the tallies from the Makki Mosque for 2006, 2007, 2008, and 2009 break down the donations by the number of bills of each denomination received, with a separate accounting for such non-cash items as checks and money orders.

15. I have reviewed the Makki Mosque's internal accounting documents provided to the FBI by CW-5, and know that, as described above, SABIR signed documents reflecting that the mosque provided Fai with approximately $73,000 between 2003 and 2009. I believe that SABIR's characterization of the donations to Fai as being between $2,000 and $3,000 each year was false, because the Makki Mosque documents reflect that none of the donations provided by the mosque to Fai between 2003 and 2009 were less than $7,000. Further, I believe that SABIR's signature on the documents, as well as the mosque's accounting procedures described by CW-5, indicate that SABIR was aware of the monies being disbursed to Fai by the Makki Mosque.

16. Based on the foregoing, I believe that the statements made by SABIR to investigators on August 12, 2010, July 19, 2011, and October 16, 2012 were false, and were intended to conceal the amount of money that SABIR helped to transfer to Fai. These statements

were material to the investigation of Fai and others that was being conducted out of the Eastern District of Virginia.

## Conclusion

17. Based on the information provided in this affidavit, there is probable cause to believe that, on or about August 12, 2010, July 19, 2011, and October 16, 2012, MOHAMMAD SABIR made materially false, fictitious, and fraudulent material statements within the jurisdiction of the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001.

Wherefore, I request the issuance of an arrest warrant pursuant to the Federal Rules of Criminal Procedure.

FURTHER THIS AFFIANT SAYETH NOT.

Sarah Webb Linden
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 18th day of October, 2013.

Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE